**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

District of New Jersey
(State)

Case number (*If known*): Chapter 11

❑ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/25

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

1. **Debtor's name** LIV Golf Holdings Ltd.

2. **All other names debtor used in the last 8 years** Performance54i Limited

   Include any assumed names, trade names, and *doing business as* names

3. **Debtor's federal Employer Identification Number** (EIN) N/A

4. **Debtor's address**

   **Principal place of business**

   1st Floor Liberation House
   Number Street
   Castle Street
   St Helier JE1 1GL
   City State ZIP Code
   Jersey
   County

   **Mailing address, if different from principal place of business**

   50 Hudson Yards
   Number Street
   Suite 65B
   P.O. Box
   New York NY 10001
   City State ZIP Code

   **Location of principal assets, if different from principal place of business**

   50 Hudson Yards
   Number Street
   Suite 65B
   New York NY 10001
   City State ZIP Code

5. **Debtor's website** (URL) https://www.livgolf.com

**6. Type of debtor**

- ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
- ☐ Partnership (excluding LLP)
- ☐ Other. Specify: ______________

**7. Describe debtor's business**

A. *Check one:*

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ☒ None of the above

B. *Check all that apply:*

- ☐ Tax-exempt entity (as described in 26 U.S.C. § 501)
- ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
- ☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

**5 5 1 1**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

- ☐ Chapter 7
- ☐ Chapter 9
- ☒ Chapter 11. *Check **all** that apply*:
  - ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).
  - ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
  - ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.
  - ☐ A plan is being filed with this petition.
  - ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
  - ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
  - ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.
- ☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

- ☒ No
- ☐ Yes. District ______ When ______ (MM / DD / YYYY) Case number ______
  District ______ When ______ (MM / DD / YYYY) Case number ______

Debtor LIV Golf Holdings Ltd.
Name

Case number (*if known*)

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
■ Yes. Debtor See Annex 1 Relationship Affiliate
District New Jersey When MM / DD / YYYY
Case number, if known

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

■ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard?

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other

**Where is the property?**
Number Street

City State ZIP Code

**Is the property insured?**

☐ No
☐ Yes. Insurance agency
Contact name
Phone

## Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

■ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☐ 1-49
☐ 50-99
☐ 100-199
☐ 200-999
■ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000
☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

Debtor LIV Golf Holdings Ltd.
Name

Case number (if known)

**15. Estimated assets**

- ❑ $0-$50,000
- ❑ $50,001-$100,000
- ❑ $100,001-$500,000
- ❑ $500,001-$1 million
- ❑ $1,000,001-$10 million
- ❑ $10,000,001-$50 million
- ❑ $50,000,001-$100 million
- ■ $100,000,001-$500 million
- ❑ $500,000,001-$1 billion
- ❑ $1,000,000,001-$10 billion
- ❑ $10,000,000,001-$50 billion
- ❑ More than $50 billion

**16. Estimated liabilities**

- ❑ $0-$50,000
- ❑ $50,001-$100,000
- ❑ $100,001-$500,000
- ❑ $500,001-$1 million
- ❑ $1,000,001-$10 million
- ❑ $10,000,001-$50 million
- ❑ $50,000,001-$100 million
- ❑ $100,000,001-$500 million
- ■ $500,000,001-$1 billion
- ❑ $1,000,000,001-$10 billion
- ❑ $10,000,000,001-$50 billion
- ❑ More than $50 billion

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 09/08/2026
MM / DD / YYYY

/s/ David Orlofsky
Signature of authorized representative of debtor

David Orlofsky
Printed name

Title Chief Restructuring Officer

**18. Signature of attorney**

/s/ Michael D. Sirota
Signature of attorney for debtor

Date 09/08/2026
MM / DD / YYYY

Michael D. Sirota
Printed name

Cole Schotz P.C.
Firm name

Court Plaza North, 25 Main Street
Number Street

Hackensack
City

NJ
State

07601
ZIP Code

201-489-3000
Contact phone

msirota@coleschotz.com
Email address

014321986
Bar number

NJ
State

| **Fill in this information to identify the case**: | |
|---|---|
| United States Bankruptcy Court for the: | |
| **District of New Jersey** (State) | |
| Case No. (*if known*): __________________ | Chapter 11 |

☐ Check if this is an amended filing

**Annex 1**
**Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor**

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the District of New Jersey for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of LIV Golf New Jersey LLC.

- LIV Golf Investments Ltd
- LIV Golf Holdings Ltd
- LIV Golf Incorporated
- Wedge IP Management Co, Limited
- Wedge IP Management Co, LLC
- LIV Golf Ltd
- LIV Golf Events (ISE) Ltd
- LIV Golf Events Limited
- LIV Golf US Media, LLC
- Wedge Event 1 Co
- Wedge Event 2 Co
- Wedge Event 3 Co
- Wedge Event 4 Co
- Wedge WPB Inc.
- Wedge Event 7 Co
- Fairway TM Blocker 1, LLC
- Fairway TM Blocker 2, LLC
- Fairway TM Blocker 3, LLC
- Fairway TM Blocker 4, LLC
- Fairway TM Blocker 5, LLC
- Fairway TM Blocker 6, LLC
- Fairway TM Blocker 7, LLC
- Fairway TM Blocker 8, LLC
- Fairway TM Blocker 9, LLC
- Fairway TM Blocker 10, LLC
- Fairway TM Blocker 11, LLC
- Fairway TM Blocker 12, LLC
- Fairway TM Blocker 13, LLC
- Fairway TM Intermediate 1, LLC
- Fairway TM Intermediate 2, LLC
- Fairway TM Intermediate 3, LLC
- Fairway TM Intermediate 4, LLC
- Fairway TM Intermediate 5, LLC
- Fairway TM Intermediate 6, LLC
- Fairway TM Intermediate 7, LLC
- Fairway TM Intermediate 8, LLC
- Fairway TM Intermediate 9, LLC
- Fairway TM Intermediate 10, LLC
- Fairway TM Intermediate 11, LLC
- Fairway TM Intermediate 12, LLC
- Fairway TM Intermediate 13, LLC
- Fairway TM Co 1, LLC
- Fairway TM Co 2, LLC
- Fairway TM Co 3, LLC
- Fairway TM Co 4, LLC
- Fairway TM Co 5, LLC
- Fairway TM Co 6, LLC
- Fairway TM Co 7, LLC
- Fairway TM Co 8 GP, LLC
- Fairway TM Co 8, LP
- Fairway TM Co 9, LLC
- Fairway TM Co 10, LLC
- Fairway TM Co 11, LLC
- Fairway TM Co 12 GP, LLC
- Fairway TM Co 12, LP
- Fairway TM Co 13, LLC

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>LIV GOLF HOLDINGS LTD,<br><br>Debtors. | Chapter 11<br><br>Case No. 26-[●] ([●]) |

## List of Equity Security Holders[1]

| Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| LIV Golf Investments Ltd | 1st Floor, Liberation House<br>Castle Street<br>St Helier<br>Jersey<br>JE1 1GL | 100% |

1 This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>LIV GOLF HOLDINGS LTD,<br><br>Debtors. | Chapter 11<br><br>Case No. 26-[●] ([●]) |

## <u>Corporate Ownership Statement</u>

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| LIV Golf Investments Ltd | 100% |

**Fill in this information to identify the case:**

Debtor name LIV Golf New Jersey LLC

United States Bankruptcy Court for the: District of NJ (State)

Case number (If known):

Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders 12/15

**A list of consolidated creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Jon Rahm, Rahm; LLC<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $7,472,527.47 |
| 2 | Bryson DeChambeau; BAD Enterprises, Inc.<br>[Redacted] | [Redacted] | Player Participation Agreement | C | | | $5,769,230.77 |
| 3 | Dustin Johnson; Dustin Johnson Enterprises, Inc.<br>[Redacted] | [Redacted] | Player Participation Agreement | C/U/D | | | $5,489,010.99 |
| 4 | Cameron Smith; Golf Dude Enterprises, LLC<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $4,835,164.84 |
| 5 | Adrian Meronk<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $4,436,813.19 |
| 6 | Tyrrell Hatton; Tyrell Hatton Golf Limited<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $3,373,626.37 |
| 7 | Gerry L Watson<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $3,324,389.10 |
| 8 | IMG Media LTD; IMG Singapore PTE Ltd; IMG Media Korea, LLC<br>Building 6, Chiswick Park<br>London<br>W4 5HR, GB | Keerthy Dileepkumar, +44-0203-1070765, MediaAR@img.com | Trade Vendor | | | | $3,200,000.00 |
| 9 | Abraham Ancer; Abraham Ancer Golf, LLC<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $2,651,098.90 |
| 10 | Byeong Hun (Ben) An; BENA Golf, Inc.<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $1,811,010.68 |
| 11 | United Nations High Commissioner for Refugees<br>Diplomatic Quarter<br>Riyadh<br>11693, KSA | Taleb Salhab , 55-884-4102, salhabt@unhcr.org | Grant Agreement | C | | | $1,717,000.00 |
| 12 | Brooks Koepka; Brooks Koepka Golf LLC<br>[Redacted] | [Redacted] | Agreement | | | | $1,681,278.54 |
| 13 | MDLBEAST Company<br>2311, Dahrat Al Awdah East 17<br>Jax District, Al-Diriyah, Riyadh<br>13732, KSA | Abdulrahman Alkalali, +966 55-134-5577,<br>abdulrahman.alkalali@mdlbeast.com | Trade Vendor | | | | $1,645,707.50 |
| 14 | Ming Entertainment Group<br>2082 Business Center Drive<br>Irvine, CA<br>92612, US | Mark Kwok, +1 949-679-2089, accounting@mingentertainment.com | Workforce Solutions | | | | $1,593,474.84 |
| 15 | Havoc Live LLC<br>1928 Locust Street<br>Saint Louis, MO<br>63103, US | Scott Jones, 404-242-9989, sjones@160over90.com | Trade Vendor | | | | $1,462,512.88 |
| 16 | Rick Shiels Media Limited<br>22 Worple Road<br>London<br>SW19 4DD, GB | Ross Livingston, 781-770-7684, accounts@rickshiels.com | Brand Partnership Agreement | | | | $1,398,300.00 |
| 17 | Caleb Surratt<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $1,331,116.76 |
| 18 | Joaquin Niemann; Joaquin Niemann, LLC<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $1,307,692.31 |
| 19 | GSE Worldwide<br>276 Fifth Avenue, Suite 711<br>New York, NY<br>10001, US | Michael Creasy, 843-764-9130, mcreasy@gseworldwide.com | Trade Vendor | | | | $1,287,500.00 |
| 20 | State of Louisiana<br>c/o Louisiana Economic Development<br>100 North St<br>Baton Rouge, LA<br>70802, US | Chris Stelly, 225-342-5555, chris.stelly@la.gov | Agreement | | | | $1,220,000.00 |
| 21 | Fresh Tape Media LLC<br>747 Kalamath St<br>Denver, CO<br>80204, US | Charles Lian, 732-485-4565, accounting@freshtapemedia.com | Trade Vendor / Litigation | C/D | | | $1,208,860.15 |
| 22 | Asian Tour Ltd<br>5 Bukit Manis Road<br>Singapore<br>099893, SG | Ng Chwe Huey, +65 6715 9440, ch.ng@asiantour.com | Agreement | C | | | $1,018,542.73 |
| 23 | 89 Blocks Holding LLC (dba EverWonder Studio)<br>460 Park Ave South<br>New York, NY<br>10016, US | Kevin Mcdonald, +1 323 240 9579,<br>kevin.mcdonald@everwonder.studio | Trade Vendor | | | | $1,014,280.26 |

**Fill in this information to identify the case:**

Debtor name LIV Golf New Jersey LLC

United States Bankruptcy Court for the: ____________ District of NJ (State)

Case number (If known): ____________

Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

**12/15**

**A list of consolidated creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 24 | Lucas Herbert<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $1,012,204.95 |
| 25 | Fantasy Interactive, Inc.<br>30 Broad Street, Floor 34<br>New York, NY<br>10004, US | Larry Barlow, 212-941-5220, finance@fantasy.co | Trade Vendor / Litigation | C/D | | | $992,870.75 |
| 26 | Outlyr, LLC<br>3 Greenwich Office Park<br>Greenwich, CT<br>06831, US | James Clark, +1 856-745-3779, accounting@outlyr.com | Trade Vendor | | | | $983,625.00 |
| 27 | Thomas McKibbin<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $973,109.89 |
| 28 | World Golf Group Limited and Premier Golf League<br>Contact Available Upon Request | GEORGEMALING@ENYOLAW.COM, + 44 (0) 7825 928 201 | Litigation | C/U/D | | | Undetermined |
| 29 | Stonehill Estate Co.<br>Contact Available Upon Request | davinder.singh@davindersinghchambers.com, +65 6328 0299 | Litigation | C/U/D | | | Undetermined |
| 30 | Kobalt Music Publishing America, Inc., BMG Rights Management GmbH 2025 and Concord Music Group, Inc.<br>Contact Available Upon Request | Keith.Hauprich@BMG.com | Litigation | C/U/D | | | Undetermined |

**Fill in this information to identify the case and this filing:**

Debtor LIV Golf Holdings Ltd

Court United States Bankruptcy Court for the District of New Jersey

Case number (*If known*): ________________________

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* ____
- ■ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ■ Other document that requires a declaration Corporate Ownership Statement and List of Equity Security Holders

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 09/08/2026
MM / DD / YYYY

✘ /s/ David Orlofsky
Signature of individual signing on behalf of debtor

David Orlofsky
Printed name

Chief Restructuring Officer
Position or relationship to debtor

**LIV GOLF HOLDINGS LTD**

(the "**Company**")

Minutes of a meeting of the board of directors of the Company held at 1st Floor, Liberation House, Castle Street, St Helier, Jersey JE1 1GL on 6 September 2026 at 7:45 pm BST (the "**Meeting**").

| | |
|---|---|
| **Present:** | Scott McClure (Chair) |
| | Michael Newton |
| | Philip Le Cornu |
| | Eugene Davis (Chair of Strategic Initiatives Committee - by telephone / videoconference) |
| | Jon Zinman (by telephone / videoconference) |
| [**In attendance:** | Claudia Williams (representing Altum Secretaries Limited as Company Secretary) |
| | Fraser Barlow (representing Altum Trustees Limited as Administrator) |
| | Eleanor Davies (representing Carey Olsen) |
| | Rebecca McQuillan (representing Carey Olsen) |
| | Jeremy Lightfoot (representing Carey Olsen) |
| | Keith Martorana (representing Gibson Dunn) |
| | Natalie Raine (representing Gibson Dunn) |
| | Christopher Howard (representing Gibson Dunn) |
| | Kyle Ezring (representing Gibson Dunn) |
| | Dan Kelsall (representing Alix Partners) |
| | David Orlofsky (representing Alix Partners) |
| | Grace Whatman (representing Alix Partners) |
| | Alastair Beveridge (representing Alix Partners) |

1. **CHAIR AND NOTICE**

1.1 Reference is made to the subscription and shareholders' agreement entered into between the Company, The Public Investment Fund of the Kingdom of Saudi Arabia ("**PIF**") and Performance54 Group Limited on 7 October 2021 as amended by the deed of amendment entered into between the Company, PIF and Performance54 Group Limited on 27 October 2022 (the "**Shareholders' Agreement**").

1.2 The directors noted:

1.2.1 the requirement under clause 5.9(i) of the Shareholders' Agreement and Article 27.4 that an Investor Director be present for a board meeting to be quorate;

1.2.2 that written consents from PIF (as Investor) dated 14 May 2026 had been received, inter alia,

waiving the need for Investor Directors and a Chairman, the application of the Reserved Matters under the Shareholders' Agreement and approving the Strategic Initiatives Committee (the "**Investor Consents**"); and

1.2.3 there was no longer a Chairman (as defined in the Shareholders' Agreement) and so the requirements in clauses: (x) 5.4 of the Shareholders' Agreement, that the Chairman be an Investor Director; and (y) 5.9(e) of the Shareholders' Agreement, that the Chairman chair all board meetings, no longer applied; and (z) the directors are authorised to appoint any director present at any meeting to act as Chair for the purposes of that meeting.

1.3 The director first named above was appointed Chair of the Meeting.

1.4 The Chair reported that:

1.4.1 the directors of the Company had all been given due notice in accordance with the Company's Articles of Association (the "**Articles**"), or had all waived the requirement to receive due notice, of the Meeting;

1.4.2 the Meeting had been duly convened in accordance with the Articles; and

1.4.3 directors resident in Jersey and a sufficient number of directors (as stipulated by the Investor Consents) were present and accordingly a quorum was present.

1.5 The Chair noted that, pursuant to the Articles, telephone attendance (including by videoconference) was permitted, and any director attending by such means would be counted as part of the quorum and otherwise be entitled to participate fully in the Meeting.

2. **PURPOSE OF THE MEETING**

The Chair explained that the Company and certain of its subsidiaries are considering and/or pursuing a coordinated restructuring process involving:

2.1.1 proceedings under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (as amended (the "**Bankruptcy Code**") (the "**Chapter 11 Proceedings**"); and

2.1.2 an application by or on behalf of the Company to The Royal Court of Jersey for an administration order in respect of the Company (the "**Jersey Administration Application**"); and

2.1.3 the contribution to LIV Golf Incorporated, a Delaware corporation ("**US OpCo**") for no consideration and without the issuance of any shares of capital stock of US OpCo, of all of the limited liability company interests held by the Company in Fairway TM Blocker 1, LLC, Fairway TM Blocker 2, LLC, Fairway TM Blocker 3, LLC, Fairway TM Blocker 4, LLC, Fairway TM Blocker 5, LLC, Fairway TM Blocker 6, LLC, Fairway TM Blocker 7, LLC, Fairway TM Blocker 8, LLC, Fairway TM Blocker 9, LLC, Fairway TM Blocker 10, LLC, Fairway TM Blocker 12, LLC, Fairway TM Blocker 13, LLC (collectively, the "Blockers") and Wedge IP Management Co, LLC ("**US IPCo**"), and all of the issued shares held by the Company in LIV Golf Limited ("**UK OpCo**") and Wedge IP Management Co, Limited ("**UK IPCo**") (collectively, the "**Contributed Interests**" and such contribution, the "**Contribution**"),

together, the "**Restructuring**".

2.2 The purpose of the Meeting was to consider and, if thought fit, approve documents and matters in

connection with the Restructuring.

3. **DIRECTORS' INTERESTS AND QUORUM**

3.1 The Chair noted that:

3.1.1 pursuant to Article 75 of the Companies (Jersey) Law 1991 (as amended) (the "**Law**"), any director of the Company who has, directly or indirectly, an interest in a transaction entered into or proposed to be entered into by the Company or by a subsidiary of the Company which to a material extent conflicts or may conflict with the interests of the Company and of which the director is aware, is required to disclose to the Company the nature and extent of that interest; and

3.1.2 the provisions of the Articles relating to disclosure of directors' interests were consistent with the foregoing.

3.2 Eugene Davis and Jon Zinman disclosed that they were also directors of US OpCo. Each director present confirmed that they had no other interest in the matters and transactions which were to be discussed at the Meeting that was required to be disclosed in order to comply with the Law and the Articles.

3.3 The Chair noted that pursuant to the Articles each director present was entitled to be counted in the quorum and vote on the matters to be discussed at the Meeting.

4. **CORPORATE BENEFIT**

4.1 The Chair noted that Article 74(1) of the Law provides that a director, in exercising their powers and discharging their duties as a director, must act honestly and in good faith with a view to the best interests of the company and exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances.

4.2 Where a company is insolvent or bordering on insolvency, or an insolvent winding up or administration is probable, the directors’ duty to act in good faith in the interests of the company should be understood as including the interests of its creditors as a whole. The greater a company's financial difficulties, the more it should prioritise creditors' interests. Where an insolvent winding up or administration is inevitable, the creditors’ interests become paramount.

4.3 It was further noted that under Jersey law a director may be personally liable, without limitation, for all the debts or other liabilities of a company arising after the time at which the director either knew there was no reasonable prospect of the company avoiding a creditors’ winding up or désastre, or was reckless as to the same, unless the director took reasonable steps to minimise potential loss to creditors.

4.4 The directors noted that the Company's principal creditor was PIF pursuant to a facility agreement dated 4 June 2026 (the "**Facility Agreement**") and the Company also had various other creditors.

4.5 It was noted that the Company was currently able to pay its liabilities as they fell due as a result of funding from its majority shareholder, PIF, but that funding was finite and, absent the Restructuring, the Company would soon become insolvent.

4.6 The directors were, therefore, required to prioritise the interests of the Company's creditors. Although there was a reasonable prospect the Company would avoid a creditors’ winding up or désastre, the directors noted that they should still take reasonable steps to minimise the potential loss to creditors.

5. **DISCUSSION**

5.1 Eugene Davis and Jon Zinman gave an overview of the discussions which have been ongoing with PIF and the potential new investors to the Company.

5.1.1 Eugene Davis reported that negotiations between PIF and the new investor had advanced significantly after the investor changed legal counsel, with lawyers working to finalise both the Chapter 11 filing documents and the funding commitment for Live 2.0. The team expected to file in the New Jersey bankruptcy courts by midday Tuesday, although PIF's written attestations and joinder might not be completed by filing; PIF had provided oral assurances and an outside date for joining the agreement.

5.2 Each director confirmed that it had:

5.2.1 reviewed: (i) presentations and other materials prepared and presented by the management team of the Company ("**Management**") and their financial and legal advisors (collectively, the "**Advisors**") regarding the liabilities, obligations, and liquidity of the Company, the strategic and financial alternatives available to the Company, and the effect of the foregoing on the Company's business operations; and (ii) the information and advice previously provided to and reviewed by the directors; and

5.2.2 had adequate opportunity to consult with Management and the Advisors regarding such presentations and materials, to obtain additional information, and to fully consider each of the strategic alternatives available to the Company and the recommendations of Management and the Advisors.

5.3 The directors noted that:

5.3.1 the Company forms part of a single integrated business and a collective process addressing the business as a whole in a single forum is likely to produce a better outcome for the Company's creditors than separate processes in multiple jurisdictions;

5.3.2 the Chapter 11 Proceedings will bring certain protections against creditors bringing certain actions and claims against the Company and its subsidiaries who are also expected to file a Bankruptcy Petition substantially concurrently with the Company;

5.3.3 the proposed Debtor-in-Possession Facility Agreement (the "**DIP Credit Agreement**" and together with all other agreements, documents, and instruments delivered and executed in connection therewith, the "**DIP Loan Documents**"), which is a pre-condition to the Chapter 11 Proceedings, should enable the Company and its subsidiaries to continue operate during the Restructuring;

5.3.4 those certain protections referred to in paragraph 5.3.2 above, including the automatic stay arising under the Bankruptcy Code on the Chapter 11 Proceedings, take effect as a matter of law in the United States;

5.3.5 as Jersey has not enacted the UNCITRAL Model Law on Cross-Border Insolvency (1997), there is no ability to obtain statutory recognition of the Chapter 11 Proceedings in Jersey as foreign main or non-main proceedings and the Jersey Administration Application is necessary in order for the Company to obtain protection under Jersey law against creditor action; and

5.3.6 that the Company's main creditor, PIF, was supportive of the Restructuring and would provide a letter confirming same in connection with the Jersey Administration Application.

5.4 The directors considered that the Chapter 11 Proceedings, together with the Jersey Administration Application, will help the Company to navigate its deteriorating financial position in the optimal way to achieve a better realisation for creditors and to minimise losses to creditors through a collective proceeding that is also in the best interests of the Company's stakeholders (including, for the avoidance of doubt, its creditors as a whole). In light of the foregoing, the directors concluded that entering into the Chapter 11 Proceedings and into the Jersey Administration Application to achieve the Restructuring is the course which best serves the interests of the Company and its creditors.

6. **DOCUMENTS**

6.1 The following documents in connection with the Restructuring (together the "**Documents**" and each a "**Document**") were produced to the Meeting:

6.1.1 the draft voluntary petition for relief (the "**Bankruptcy Petition**") for the Company under the provisions of the Bankruptcy Code to be filed in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**");

6.1.2 the DIP Credit Agreement and DIP Loan Documents to be made between, amongst others, LIV Golf Incorporated (as DIP Loan Party (as defined in the DIP Credit Agreement)), LIV Golf Investments Ltd (as parent), the Company (as holdings), the other Subsidiary Guarantors (as defined in the DIP Credit Agreement) party thereto (together with Parent and Holdings, the "**DIP Loan Parties**") and PIF;

6.1.3 an all-intangible assets security interest agreement to be made between the Company and PIF under the DIP Loan Documents;

6.1.4 the representation (the "**Representation**") and supporting affidavit (the "**Director's Affidavit**") proposed to be submitted to The Royal Court of Jersey in support of the Jersey Administration Application, it being noted that these were in initial draft form; and

6.1.5 a contribution and assignment agreement between the Company and US OpCo (the "**Contribution Agreement")**, to be effective at the time specified therein (the "**Contribution Effective Time**"), and stock transfer forms in respect of the shares of UK OpCo and UK IPCo (the "**Stock Transfer Forms**").

6.2 For informational purposes, the directors were also presented with the draft affidavit prepared on behalf of the proposed administrators (the "**Administrator's Affidavit**"), the draft administration order, and the letter to be sent by way of notice to the Viscount) (the "**Restructuring Documents**").

6.3 The terms of the Documents and the Restructuring Documents were carefully considered.

6.4 The directors noted that certain of the Documents and Restructuring Documents remained subject to finalisation by the Company's legal, financial and other advisers, and, in the case of the Director's Affidavit and the Administrator's Affidavit, were subject to further consideration and input by, respectively, the deponent director and the proposed joint administrators. The material terms and intended effect of the Documents, the Restructuring Documents and the Restructuring were explained to the Meeting.

7. **JERSEY ADMINISTRATION APPLICATION**

7.1 The directors considered the proposed Jersey Administration Application and the statutory requirements for The Royal Court of Jersey to make an administration order, as set out in Part 20B of the Law and, in particular, Article 143D of the Law..

7.2 Having considered the matters above and the Documents, the directors formed the belief that the statutory test for the making of an administration order in respect of the Company is satisfied, on the following basis:

7.2.1 the Company is, or is likely to become, insolvent on a cash flow basis (i.e. the Company is unable to pay its debts as they fall due) and that administration is reasonably likely to achieve either or both of:

(a) the rescuing of the Company, or the whole or any part of its undertaking, as a going concern; or

(b) a more advantageous realisation of the Company's assets than would be achieved by a winding up.

7.3 It was further noted that:

7.3.1 the Company intends to appoint Andrew McFarlane Wood and Alastair Beveridge to serve as joint administrators (the "**Joint Administrators"**); and

7.3.2 the Joint Administrators had the requisite expert knowledge and experience in similar scenarios and would be well placed to act in that capacity.

7.4 The directors considered that making the Jersey Administration Application would facilitate an orderly and coordinated restructuring, preserve value and provide a framework for engagement with creditors and other stakeholders, and that pursuing the application was in the best interests of the Company having regard to the interests which the directors are required to consider in the Company's circumstances.

7.5 The directors noted that a director would be required to depose the Director's Affidavit confirming the above matters and setting out the basis for the directors' decision.

7.6 The directors noted that notices to secured creditors and the Viscount must be given in the form and within the period advised by Jersey counsel, and that the Viscount should receive copies of the Representation and supporting affidavits (namely, the Director's Affidavit and the Administrator's Affidavit) in materially final form.

8. **CONTRIBUTION TO USOPCO**

8.1 The directors discussed:

8.1.1 the purpose and timing of the Contribution and the alternative courses available to the Company;

8.1.2 the intended tax structuring objectives, including preserving the availability and value of certain tax assets of the Company and its subsidiaries in connection with the Restructuring;

8.1.3 the fact that that substantially all of the value of the assets held by the Company is attributable

to the Contributed Interests, US OpCo is a direct, wholly owned subsidiary of the Company, that the Company will retain indirect ownership of the Contributed Interests and that each contributed entity will continue to own its assets and remain responsible for its liabilities;

8.1.4 the benefits expected to accrue to the Company from aligning the legal entity structure of the Company and its subsidiaries with their go-forward ownership and operating structure and consolidating governance, administration, financing and reporting beneath US OpCo;

8.1.5 the potential structural subordination of the Company's creditors to creditors of US OpCo, the existing and expected liabilities and creditor claims at each entity, the expected effect on recoveries by the Company's creditors and the extent of creditor support or opposition communicated to the Company;

8.1.6 PIF's security package, the steps described below to preserve equivalent security over the Contributed Interests and the expected effect of the Contribution on PIF's recovery;

8.1.7 the expected effect of the Contribution on the Company's ongoing financial position and cash flow, including the liabilities and creditor claims that will remain at the Company, the Company's expected resources to satisfy them, its ability to pay its debts as they fall due following the Contribution and the interests of the Company's other stakeholders; and

8.1.8 the potential application of Jersey law relating to transactions at an undervalue, including that the Contribution is to an associated company for no consideration, the Company's financial condition at and after the Contribution; and

8.1.9 that the Jersey court cannot set aside a transaction at an undervalue where that transaction is entered into in good faith for the purpose of carrying on a company's business and there are reasonable grounds for believing that it will benefit that company.

8.2 It was noted that:

8.2.1 the Company and US OpCo intend to effect the Contribution as a "Permitted Disposal" pursuant to paragraph (b) of the definition of "**Permitted Disposal**" and Clause 18.15(b)(i) of the Facility Agreement on the basis that the Company and US OpCo are each Obligors and US OpCo will give equivalent security over the Contributed Interests to the extent the Company has given security over them, that the Company will notify PIF of the Contribution and provide the reasonable details required by Clause 18.15(b) of the Facility Agreement, and that, on that basis, the Contribution does not require PIF's consent under the Facility Agreement; and

8.2.2 to preserve PIF's security package, (i) upon their acquisition by US OpCo, the limited liability company interests included in the Contributed Interests will be subject to the security granted by US OpCo under the US Security Agreement dated as of 4 June 2026 among US OpCo, US IPCo, the other grantors party thereto and PIF, as secured party (as amended, restated, supplemented or otherwise modified from time to time, the "**US Security Agreement**"), and US OpCo will deliver a security supplement reflecting those interests within five Business Days after the Contribution Effective Time (the "**Security Supplement**") , and (ii) US OpCo will, at or before the Contribution Effective Time, execute and deliver as a deed poll an English-law charge over the shares of UK OpCo and UK OPCo included in the Contributed Interests in favour of PIF (the "**Share Charge**").

8.3 Each director confirmed their belief that:

8.3.1 the Contribution is intended to preserve material value for the Company and its subsidiaries and facilitate the contemplated restructuring;

8.3.2 the expected benefits to the Company and its creditors as a whole outweigh the potential adverse effects, including any structural subordination described above;

8.3.3 the Contribution is being entered into in good faith for the purpose of carrying on the Company's business and there are reasonable grounds for believing that the Contribution will benefit the Company; and

8.3.4 the Contribution is in the best interests of the Company and its subsidiaries.

9. **RESOLUTIONS & AUTHORISATIONS**

After due consideration and discussion **IT WAS UNANIMOUSLY RESOLVED** that:

9.1 it was a proper exercise of the powers of the Company and in the best interests of the Company for the Company to enter into the Documents to which the Company was proposed to be a party and otherwise to participate in the Restructuring and accordingly the entering into of such Documents and the participation by the Company in the Restructuring be approved;

9.2 the Company file the Bankruptcy Petition for the Company under the provisions of chapter 11 of title 11 of the Bankruptcy Code in the Bankruptcy Court;

9.3 the Company appoints and retains pursuant to sections 327(a) or 328 of the Bankruptcy Code (i) Gibson, Dunn & Crutcher LLP as co-bankruptcy counsel; (ii) Cole Schotz P.C. as co-bankruptcy counsel; (iii) AlixPartners, LLP as financial advisor; (iv) Ducera Partners LLC as investment banker; (v) Omni Agent Solutions, Inc. as administrative advisor, claims and noticing agent; (vi) Kobre & Kim LLP as special counsel; (vii) KPMG LLP as tax services provider, in each case, upon the terms and conditions set forth in the engagement letters, as professional advisers in relation to the Restructuring, and any director is further authorised to employ any other professionals to assist the Company in carrying out its duties under the Bankruptcy Code or in relation to the Restructuring, and any director be authorised to execute appropriate retention agreements and engagement letters, to pay appropriate retainers and fees, and to cause to be filed appropriate applications for authority to retain the services of any other professionals as necessary;

9.4 the Company further appoints and retains and (i) Georgina Peters and Daniel Judd of South Square Chambers; (ii) Carey Olsen Jersey LLP; (iii) Andy Wood; (iv) Alastair Beveridge, in each case, upon the terms and conditions set forth in the engagement letters, as professional advisers in relation to the Restructuring, and any director is further authorised to employ any other professionals to assist the Company in carrying out its duties under the Bankruptcy Code or in relation to the Restructuring, and any director be authorised to execute appropriate retention agreements and engagement letters, to pay appropriate retainers and fees, and to cause to be filed appropriate applications for authority to retain the services of any other professionals as necessary;

9.5 the Company appoints David Orlofsky as chief restructuring officer of the Company, in which capacity he shall (i) execute and file the Bankruptcy Petition for the Company; (ii) be authorised to act as a representative of the Chapter 11 Proceedings (in that capacity, the "**Foreign Representative**"); and (iii)

be authorised to seek approval from the Bankruptcy Court to act as Foreign Representative; and (iv) execute the certain cross-border insolvency protocol (the "**Cross Border Protocol**");

9.6 the terms of the Cross Border Protocol are approved, and David Orlofsky is authorised, in his capacity as chief restructuring officer of the Company, to execute the Cross Border Protocol and bind the Company with effect from the Chapter 11 Proceedings;

9.7 the directors believe that the statutory test for the making of an administration order in respect of the Company is satisfied for the reasons recorded in these minutes and to be set out in the Representation and the Director's Affidavit;

9.8 the Jersey Administration Application be and is approved, including the presentation of the Representation and the filing, service and prosecution of all supporting or related documents;

9.9 the appointment of the Joint Administrators as proposed administrator(s) of the Company be and is approved, subject to the making of the administration order by the Royal Court of Jersey;

9.10 the commencement, conduct and pursuit of the Chapter 11 Proceedings, and the Company's participation in and support for those proceedings, be and are approved;

9.11 the Contribution be completed once (A) US OpCo has executed and delivered the Share Charge as a deed poll, to become effective at or before the Contribution Effective Time, and (B) arrangements have been made for US OpCo to deliver the Security Supplement, the new share certificates and the blank stock transfer forms required by the applicable security documents within the periods specified therein;

9.12 any director (or any alternate director) or the company secretary (each, an "**Authorised Signatory**") (whether acting singly or jointly with another Authorised Signatory) be authorised to:

9.12.1 execute (in any manner whatsoever, including by electronic signature) and deliver on behalf of the Company:

(a) the Documents to which the Company was proposed to be a party, either in the form produced to the Meeting or with any variation or amendment as any Authorised Signatory in their sole and absolute discretion shall approve;

(b) any other document or instrument (together the "**Ancillary Documents**") which such Authorised Signatory considers in their sole and absolute discretion to be necessary or desirable in connection with the Restructuring or any of the Documents; and

(c) without prejudice to the generality of paragraph 9.12.1(a) above, the Contribution Agreement and the Stock Transfer Forms, and any other notices, consents, certificates, agreements or documents required under or in connection with the Contribution, including (A) any written consent of the Company as sole member of the Blockers and US IPCo, (B) the notice and reasonable details to be provided to PIF under Clause 18.15(b) of the Facility Agreement and (C) any document to be delivered by the Company under the Finance Documents (as defined in the Facility Agreement) to which it is party with any variation or amendment as any Authorised Signatory in their sole and absolute discretion shall approve;

9.12.2 take such actions and steps and give such notices or instructions on behalf of the Company which such Authorised Signatory considers in their sole and absolute discretion to be necessary

or desirable in connection with the Documents, the Ancillary Documents or the Restructuring (together the "**Actions**").

9.13 for the purposes of the resolutions at paragraph 9.11 above:

9.13.1 the approval of an Authorised Signatory to any variation or amendment to any Document shall be conclusively evidenced by their signing that Document containing such variation or amendment; and

9.13.2 the fact that an Authorised Signatory considers the execution and delivery of any Ancillary Document or the taking of any Action to be necessary or desirable shall be conclusively evidenced by their signing that Ancillary Document or taking that Action (respectively); and

9.13.3 an Authorised Signatory may, in their sole and absolute discretion, authorise and direct another person to affix, attach or insert the electronic signature of that Authorised Signatory to, or in, any Document or Ancillary Document and/or to date it and/or to take any step for its release and delivery; and

9.14 the company secretary be instructed to make any and all necessary filings (including with the Companies Registry) and update all relevant records of the Company in connection with the foregoing.

10. **CLOSE OF MEETING**

There being no further business, the Meeting then closed.

Signed by:

2C8D8274859C46C...................................

**Chair**